IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JOSEPH RUPPERT, as Trustee of and on behalf of
Fairmount Park, Inc. Retirement Savings Plan,
and on behalf of all others similarly situated,

  Plaintiff,

v.

PRINCIPAL LIFE INSURANCE COMPANY,

  Defendant.           No. 06-cv-903-DRH

## MEMORANDUM and ORDER

**HERNDON, District Judge:**

    This matter is before the Court on the motion for reconsideration (Doc. 57) and the motion for oral argument thereon (Doc. 61) brought by Plaintiff Joseph Ruppert. For the following reasons, the motions are **DENIED**.

## I. Introduction

    This case is a putative class action for breach of fiduciary duty brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461. Ruppert, who is a trustee of the Fairmount Park, Inc. Retirement Savings Plan ("The Plan"), alleges that he is a fiduciary of the Plan and that the Plan is an employee benefit plan, specifically, a 401(k) plan or defined contribution plan, all within the meaning of ERISA. *See* 29 U.S.C. § 1002(21)(A), (2)(A), (3), (34). Defendant Principal Life Insurance Company ("Principal") is an Iowa-based company that provides investment options to the Plan, including mutual funds in which Plan participants can choose to invest their pre-tax earnings. Ruppert challenges agreements between Principal and the mutual funds offered in the Plan because the funds compensate Principal

Page 1 of  14

based on a percentage of the assets it channels into the funds.  According to Ruppert, this arrangement violates ERISA in two ways.  First, Ruppert alleges, Principal is a Plan fiduciary that is compensating itself with Plan assets, thereby breaching its fiduciary duties of loyalty and care under ERISA.  *See* 29 U.S.C. § 1104(a)(1)(A), (a)(1)(B); 29 U.S.C. § 1109(a).  Second, Ruppert alleges that Principal, as a Plan fiduciary, has created a quid pro quo arrangement – inclusion of a fund as an investment option in the Plan in exchange for revenue sharing – that constitutes a prohibited transaction under ERISA.  *See* 29 U.S.C. § 1106(b).  Ruppert brings this action pursuant to 29 U.S.C. 1132(a)(2) and seeks to represent a nationwide class of employee benefit plans to which Principal provides investment options and as to which Principal has "revenue sharing" agreements with mutual funds families whose mutual funds are offered in the plans.

On June 1, 2007, the Court ordered this action transferred to the United States District Court for the Southern District of Iowa pursuant to 28 U.S.C. § 1404.  Transfer was stayed for ten days to permit Ruppert to pursue whatever appellate remedies he may have with respect to the transfer decision.  *See generally* 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3846 (3d ed. 1998 & Supp. 2007) ("Because appellate review of the transfer order and certain other matters, if it is available at all, . . . is more appropriate in the court of appeals in which the transferor court sits than in the court of appeals to which the case is transferred, the better practice . . . is to stay the effect of grants of transfer of venue routinely for a sufficient period to enable appellate review to be sought.") (collecting cases).  On June 7, 2007, Ruppert moved for reconsideration of the transfer order, as well as for a stay of transfer.  On June 8, 2007, the Court stayed transfer pending resolution of Ruppert's motion for reconsideration.  Ruppert has requested oral argument as to his motion for reconsideration.  Having reviewed the record

carefully, the Court concludes that oral argument would not be helpful in this matter.  The motion for reconsideration has been fully briefed and is ripe for decision, and the Court now is prepared to rule.

## II. Discussion

An order granting or denying a motion to transfer venue under 28 U.S.C. § 1404 is interlocutory in character.  *See Hill v. Potter*, 352 F.3d 1142, 1144 (7th Cir. 2003) ("Transfer orders, including ones transferring a case for the convenience of the parties and witnesses, . . . are not appealable final decisions.").  Although the Federal Rules of Civil Procedure contain express provisions governing reconsideration of final orders and judgments, reconsideration of interlocutory decisions "is a matter of a district court's inherent power."  *Koelling v. Livesay*, 239 F.R.D. 517, 519 (S.D. Ill. 2006).  *See also Canon U.S.A, Inc. v. Nippon Liner Sys., Ltd.*, No. 90C 7350, 1992 WL 137406, at *1 (N.D. Ill. June 2, 1992); *Giguere v. Vulcan Materials Co.*, No. 87 C 7043, 1988 WL 107387, at *4 (N.D. Ill. Oct. 13, 1988).  Such motions "serve a limited function:  to correct manifest errors of law or fact or to present newly discovered evidence."  *Zurich Capital Mkts. Inc. v. Coglianese*, 383 F. Supp. 2d 1041, 1045 (N.D. Ill. 2005) (quoting *Publishers Res., Inc. v. Walker-Davis Publ'ns, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985)).  Reconsideration of an interlocutory order may be granted where:  "the court has misunderstood a party; the court has made a decision outside the adversarial issues presented to the court by the parties; the court has made an error of apprehension (not of reasoning); a significant change in the law has occurred; or significant new facts have been discovered."  *Wilson v. Cahokia Sch. Dist. # 187*, 470 F. Supp. 2d 897, 913 (S.D. Ill. 2007) (collecting cases).

Reconsideration of an interlocutory order is committed to a court's sound discretion.

*See Harrisonville Tel. Co. v. Illinois Commerce Comm'n*, 472 F. Supp. 2d 1071, 1074 (S.D. Ill. 2006); *IMI Norgren, Inc. v. D&D Tooling & Mfg., Inc.*, No. 00 C 5789, 2003 WL 40499, at *2 (N.D. Ill. Jan. 6, 2003); *Fisher v. National R.R. Passenger Corp.*, 152 F.R.D. 145, 149 (S.D. Ind. 1993). Further, "[m]otions for reconsideration generally are not encouraged." *Johnson v. City of Kankakee*, No. 04-2009, 2007 WL 1431874, at *1 (C.D. Ill. May 11, 2007) (quoting *Wilson*, 470 F. Supp. 2d at 913). *See also Automatic Liquid Packaging, Inc. v. Dominik*, No. 86 C 5595, 1987 WL 26149, at *1 (N.D. Ill. Dec. 2, 1987). This is because, "[i]n general, a district court's rulings 'are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure,' and 'ill-founded requests for reconsideration of matters previously decided . . . needlessly take the court's attention from current matters and visit inequity upon opponents who, prevailing in an earlier proceeding, must nevertheless defend their position again and again.'" *Harrisonville Tel. Co.*, 472 F. Supp. 2d at 1074 (quoting *Berger v. Xerox Ret. Income Guar. Plan*, 231 F. Supp. 2d 804, 820 (S.D. Ill. 2002)). *See also Asllani v. Board of Educ. of City of Chicago*, 845 F. Supp. 1209, 1226 (N.D. Ill. 1993) (noting that, as a rule, motions for reconsideration "do nothing but express dissatisfaction with a prior ruling and ask the court to change its mind").

The Court turns to Ruppert's motion for reconsideration. To the extent Ruppert's motion can be said to present evidence, this evidence consists of a page from an Internet website maintained by Wal-Mart Stores, Inc., ("Wal-Mart") showing that the company operates 138 stores and "supercenters" in the State of Illinois, just one more than the number of employee benefit plans to which Principal has furnished services in this District, thus showing, according to Ruppert's attorneys, that this litigation has a substantial nexus with this District that precludes transfer. It is not clear why this evidence could not have been adduced earlier. *See Drnek v. City of Chicago*, 205

F. Supp. 2d 894, 895-96 (N.D. Ill. 2002) (quoting *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987)) (a motion for reconsideration "cannot in any case be employed as a vehicle to introduce new evidence that could have been adduced during pendency of the [underlying] motion.").[1]  Additionally, the Court finds highly questionable the utility of the comparison drawn by Ruppert's attorneys between Principal and Wal-Mart.  Even assuming for the sake of argument that any meaningful analogy can be drawn between the business models of Wal-Mart, on the one hand, and Principal, on the other, for the comparison to be at all useful the Court would have to know, at a minimum, what percentage of Wal-Mart's business is derived from its operations in Illinois.  In this instance it is undisputed that less than half of one percent of the plans Principal services are located in this District.

Finally and most fundamentally, however, the overall number of plans serviced by Principal is a red herring, as the only plan at issue in this case is the one of which Ruppert is a trustee.  "ERISA expressly confers standing on four classes of plaintiffs:  beneficiaries, participants, fiduciaries, and the Secretary of Labor."  *Mutual Life Ins. Co. of N.Y. v. Yampol*, No. 83 C 9701, 1986 WL 1426, at *1 (N.D. Ill. Jan. 13, 1986) (citing 29 U.S.C. § 1132(a)).  *See also Corbin v. Blankenburg*, 39 F.3d 650, 653 (6th Cir. 1994) (citing *Pressroom Unions-Printers League Income Sec. Fund v. Continental Assurance Co.*, 700 F.2d 889, 891-92 (2d Cir. 1983)) (in general, an action under ERISA for breach of fiduciary duty "may be brought only by a member of one of the

---

1.    Also, the proffered evidence suffers from obvious problems with respect to hearsay and lack of foundation that render highly questionable the propriety of considering it in evaluating Ruppert's motion for reconsideration.  *See United States v. Jackson*, 208 F.3d 633, 637 (7th Cir. 2000) (quoting *St. Clair v. Johnny's Oyster & Shrimp, Inc.*, 76 F. Supp. 2d 773, 775 (S.D. Tex. 1999)) (holding that Internet postings were inadmissible hearsay and opining that "[a]ny evidence procured off the Internet is adequate for almost nothing, even under the most liberal interpretations of the hearsay exception rules.").

categories of people (the Secretary of Labor, a plan participant, a plan beneficiary, a plan fiduciary, or (for suits against the Secretary) a plan administrator) specifically named in 29 U.S.C. § 1132."). The category of "fiduciaries" authorized to bring suit under ERISA includes trustees of an employee benefit plan.  In *Peoria Union Stockyards Co. Retirement Plan v. Penn Mutual Life Insurance Co.*, 698 F.2d 320 (7th Cir. 1983), the court held that "the participants, the trustees, and the plan itself all have standing to complain" of a breach of fiduciary duty.  *Id.* at 326.  *See also Trustees of Hotel Employees & Rest. Employees Int'l Union Welfare Pension Fund v. Amivest Corp.*, 733 F. Supp. 1180, 1184 (N.D. Ill. 1990) ("The Trustees are fiduciaries of the pension plans and, therefore, are authorized to bring a civil ERISA claim for breach of fiduciary duty."); *Freund v. Marshall & Ilsley Bank*, 485 F. Supp. 629, 635 (W.D. Wis. 1979) (citing 29 C.F.R. § 2509.75-8, D-3) ("By the very nature of their positions, plan trustees and a plan administrator are fiduciaries with respect to a plan.").

However, while Ruppert is a fiduciary of the Plan with standing to sue on behalf of the Plan, he does not have standing to sue on behalf of plans of which he is not a fiduciary.  "[I]n order to have standing to sue under ERISA as a 'fiduciary,' . . . a party must be (or have been) not merely a fiduciary of any ERISA plan, but rather, a fiduciary of the particular plan victimized by the alleged breach or victimized by the alleged breach of fiduciary duty."  *Weiler v. Lapkoff*, No. 02 C 4263, 2002 WL 31749199, at *3 (N.D. Ill. Dec. 6, 2002) (quoting *Pilkington PLC v. Perelman*, 72 F.3d 1396, 1399 (9th Cir. 1995)).  This position "is consistent with the requirement that the plaintiff be a fiduciary pursuant to 29 U.S.C. § 1132(a), and that a plaintiff allege that he has sustained a personal injury in fact that is fairly traceable to the defendant's alleged unlawful conduct and likely to be redressed by the relief requested."  *Id.* (citing *Johnson v. Allsteel, Inc.*, 259 F.3d 885,

887 (7th Cir. 2001)).  *See also Ossey v. Mardola*, No. 96 C 296, 1997 WL 223070, at *2 (N.D. Ill.

Apr. 28, 1997) (quoting *Chemung Canal Trust Co. v. Sovran Bank/Maryland*, 939 F.2d 12, 14

(2d Cir. 1991)) (a former plan fiduciary has no standing to sue for breach of fiduciary duty on behalf

of a plan:  "There is no indication of a legislative intent to grant a former fiduciary a continuing right

to sue on behalf of the plan[.]"); *Roncone v. Ligurotis*, No. 92 C 4054, 1993 WL 321737, at **2-3

(N.D. Ill. Aug. 20, 1993) (a former fiduciary "no longer has standing under ERISA to seek

judicial redress as a fiduciary.").  *Cf. Blackmar v. Lichtenstein*, 603 F.2d 1306, 1310 (8th Cir. 1979)

(a former trustee "ceased to be a fiduciary and no longer had the capacity to sue for violations which

may have occurred under [ERISA].").

        In sum, Ruppert's lack of standing to sue on behalf of plans of which he is not a

fiduciary renders irrelevant the question of the total number of plans serviced by Principal in this

District and elsewhere.  *See LoPresti v. Citigroup Inc.*, 171 Fed. Appx. 900, 901 (2d Cir. 2006) ("To

recover on his ERISA claims, Appellant was required to establish that he was a fiduciary of an

ERISA plan and that . . . [it is] the same plan in which the violations [of fiduciary duty] are alleged

to have occurred."); *Sanofi-Synthelabo Inc. v. Eastman Kodak Co.*, No. 99 Civ. 4888 LAP, 2000

WL 1611068, at **3-4 (S.D.N.Y. Oct. 27, 2000) (a plaintiff has no standing to bring suit for breach

of fiduciary duty on behalf of a plan of which he was never a fiduciary); *Modern Woodcrafts, Inc. v.*

*Hawley*, 534 F. Supp. 1000, 1013-14 (D. Conn. 1982) (trustees of an employee benefit plan lacked

standing to sue for breach of fiduciary duty on behalf of a different employee benefit plan); *Smith v.*

*Hickey*, 482 F. Supp. 644, 650 (S.D.N.Y. 1979) (plaintiff fiduciaries of an employee benefit plan

lacked standing as "fiduciaries" under ERISA to sue the fiduciaries of a different plan because the

plaintiffs had never been fiduciaries of the latter plan).  *See also Crichton v. Golden Rule Ins. Co.*,

Civil No. 06-264-GPM, 2006 WL 2349961, at *3 (S.D. Ill. Aug. 11, 2006) (the class-action device cannot be used to manufacture standing that a class representative does not possess).  Accordingly, in evaluating the propriety of transfer the Court places no significance on the matter of whether Principal provides services to a large number or a small number of plans within the District, and whether the number of such plans is greater or less than the number of stores operated by Wal-Mart in Illinois.

The remainder of the motion for reconsideration is devoted to rearguing points that were raised by Ruppert's attorneys in the briefing on Principal's motion for transfer and, in the Court's discretion, rejected.  *See Zurich Capital Mkts. Inc.*, 383 F. Supp. 2d at 1045 (quoting *In re Oil Spill by "Amoco Cadiz" Off Coast of France on Mar. 16, 1978*, 794 F. Supp. 261, 267 (N.D. Ill. 1992)) ("Motions to reconsider are not at the disposal of parties who want to 'rehash' old arguments.").  Specifically, Ruppert argues that the Court erred in failing to accord controlling weight to his choice of forum.  Also, Ruppert contends that the effect of transfer is to shift inconvenience from Principal to Ruppert, particularly as the cost of litigating in Iowa will be unduly burdensome for him and the Plan.  With respect to the degree of deference to be accorded Ruppert's choice of forum, in general, of course, a plaintiff's choice of forum is entitled to "some" weight, especially when the action is brought in the plaintiff's home forum.  *Somers v. Flash Tech. Corp. of Am.*, No. IP00-455-C-B/S, 2000 WL 1280314, at *2 (S.D. Ind. Aug. 25, 2000) (quoting *FDIC v. Citizens Bank & Trust Co. of Park Ridge, Ill.*, 592 F.2d 364, 368 (7th Cir. 1979)).  On the other hand, the Court typically accords less deference to a plaintiff's choice of forum when, as here, an action is brought as a class action.  *See George v. Kraft Foods Global, Inc.*, No. 06-cv-798-DRH, 2007 WL 853998, at *5 (S.D. Ill. Mar. 16, 2007) (holding that "a plaintiff's choice of forum is

entitled to some deference, albeit reduced, even in the class-action context.") (collecting cases).  In

any event, 28 U.S.C. § 1404(a) "accords broad discretion to district court, and [a] plaintiff's choice

of forum is only one relevant factor for its consideration."  *Baymont Franchising, LLC v. Heartland

Props., LLC*, No. 05-C-0606, 2005 WL 2922225, at *3 (E.D. Wis. Nov. 3, 2005) (citing *Norwood

v. Kirkpatrick*, 349 U.S. 29, 32 (1955)).  *See also Marquette Transp. Co. v. Trinity Marine Prods.,

Inc.*, No. 06 C 4506, 06 C 4507, 06 C 4508, 06 C 4509, 2006 WL 3783412, at *2 (N.D. Ill. Dec. 19,

2006) (noting that the factor of a plaintiff's choice of forum "is not usually dominant" in evaluating

the propriety of transfer, and that "it is not the only factor a court must consider."); *Portfolio Techs.,

Inc. v. Church & Dwight Co.*, No. 04 C 5141, 2004 WL 2931286, at *2 (N.D. Ill. Dec. 9, 2004)

(observing that "[a] plaintiff's choice of forum is usually not the determinative factor" in the transfer

analysis).

        Most importantly, it is clear that the revenue sharing transactions underlying this case

did not occur in this District, a factor that weighs against giving deference to Ruppert's choice of

forum.  "A large measure of deference is due to the plaintiff's freedom to select his own forum.  Yet

this factor has minimal value where none of the conduct complained of occurred in the forum

selected by the plaintiff."  *Chicago, Rock Island & Pac. Ry. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir.

1955).  *See also Heston v. Equifax Credit Info. Servs. LLC*, No. 03 C 2476, 2003 WL 22243986,

at *1 (N.D. Ill. Sept. 26, 2003) (a failure to allege facts connecting a plaintiff's claims to locations

within the district where the plaintiff has chosen to sue "weighs in favor of transfer"); *Russellville

Steel Co. v. Sears, Roebuck & Co.*, No. 99 C 485, 2000 WL 91680, at *3 (N.D. Ill. Jan. 19, 2000)

(a plaintiff's choice of forum is given "virtually no weight" when the forum lacks "a significant

relationship with the underlying dispute"); *Alliance Gen. Ins. Co. v. Deutsch, Kerrigan & Stiles,*

*L.L.P.*, No. 99 C 2311, 1999 WL 637205, at *1 (N.D. Ill. Aug. 16, 1999) ("[A] claim having no substantive connection to a forum creates only a minimal preference (if any at all) for the plaintiff's choice of forum."); *Boyd v. Snyder*, 44 F. Supp. 2d 966, 970 (N.D. Ill. 1999) ("When . . . the conduct and events giving rise to the cause of action did not take place in the plaintiff's selected forum, . . . the plaintiff's preference has minimal value . . . even if it is his home forum."); *Von Holdt v. Husky Injection Molding Sys., Ltd.*, 887 F. Supp. 185, 188 (N.D. Ill. 1995) ("[T]he weight given to plaintiff's choice of forum is lessened if the chosen forum has relatively weak connections with the operative facts giving rise to the claim.").  *Accord Chrysler Capital Corp. v. Woehling*, 663 F. Supp. 478, 482 (D. Del. 1987) ("[W]hen the plaintiff chooses a forum which has no connection to himself or the subject matter of the suit, and is thus not his 'home turf,' the burden on the defendant is reduced and it is easier for the defendant to show that the balance of convenience favors transfer."); *Cain v. New York State Bd. of Elections*, 630 F. Supp. 221, 227 (E.D.N.Y. 1986) ("The Court notes that, while it respects Fahy's right as a plaintiff to file suit in a forum of his choosing, this choice is not entitled to the weight generally accorded such a decision where there is lacking any material connection or significant contact between the forum and the events allegedly underlying the cause of action.").  Where there is no material connection between this District and the transactions underlying this case, the Court accords little deference to Ruppert's choice of forum.

Finally, the Court disagrees with Ruppert's contention that the effect of transfer is simply to shift inconvenience.  Rather, this is a case where inconvenience to Principal clearly outweighs the convenience of this forum for Ruppert.  As discussed, the transactions underlying this lawsuit have no nexus with this District, and all of Principal's witnesses with the most material knowledge of those transactions are located in the transferee forum.  *See USA Interactive v.*

*Savannah Air Ctr., LLC*, No. 02 Civ. 3659(LLS), 2002 WL 1808236, at *3 (S.D.N.Y. Aug. 7, 2002)

(in a suit by an owner of an aircraft in New York against a Georgia corporation, claiming that the

defendant breached a contract to refurbish the aircraft, holding that the most convenient forum was

Georgia, where the alleged breach occurred and where the most material witnesses resided, so that

a Georgia forum would be most convenient for them).  Although Ruppert's attorneys place heavy

emphasis on the fact that Principal is a wealthy corporation and comparatively larger than the Plan's

sponsor, the Court finds this argument unpersuasive and in fact more than a little disingenuous.  In

the general run of litigation between corporations, of course, "a disparity between the relative

means" of corporate parties is an appropriate factor to consider in evaluating transfer.  *Abovepeer,*

*Inc. v. Recording Indus. Ass'n of Am., Inc.*, 166 F. Supp. 2d 655, 660 (N.D.N.Y. 2001) (noting that

the fact that "the Defendants include some of the largest corporations in the country while Plaintiff

is a recently formed computer software company, the very existence of which is endangered by this

lawsuit" was a factor weighing against transfer).  However, this case is not a typical suit between

corporations.

          In this case the record discloses no competent proof that litigating in Iowa will

impose an undue financial burden on Ruppert and the Plan.  A party arguing against or for transfer

because of inadequate means must offer documentation to show that transfer (or lack thereof) would

be unduly burdensome to his or her finances.  *See Morgan Guar. Trust Co. of N.Y. v. Tisdale*, No.

95 Civ. 8023 (BSJ), 1996 WL 544240, at *7 (S.D.N.Y. Sept. 25, 1996) (where parties arguing for

or against transfer on the basis of financial hardship fail to submit affidavits regarding their relative

financial means, the court is entitled to treat such claims of financial hardship as "speculation");

*Lappe v. American Honda Motor Co.*, 857 F. Supp. 222, 230 (N.D.N.Y. 1994) (rejecting a claim that

transfer would impose financial hardship on a plaintiff where the plaintiff had "not offered any documentation to show that prosecuting his action in this court would be unduly burdensome to his finances"). Ruppert's attorneys have submitted no documentation in support of their claim that litigating in Iowa will impose financial hardship on Ruppert and the Plan. Moreover, as Ruppert's attorneys freely acknowledge, Ruppert and the Plan are not paying them on an hourly basis. The Court is quite certain that Ruppert's attorneys are working on a contingency-fee basis, in anticipation either of a statutory award of attorney's fees and costs under ERISA, *see* 29 U.S.C. § 1132(g)(1), or, more likely, an award of a percentage of any "common fund" that may be recovered in this case. *See Cooper v. IBM Personal Pension Plan*, No. Civ. 99-829-GPM, 2005 WL 1981501, at *3 (S.D. Ill. Aug. 16, 2005); *Berger v. Xerox Corp. Ret. Income Guar. Plan*, No. 00-584-DRH, 2004 WL 287902, at **2-3 (S.D. Ill. Jan. 22, 2004). In other words, it is exceedingly unlikely that litigating either here or in the Southern District of Iowa will have any impact on the out-of-pocket expenses Ruppert and the Plan will incur in this case. *See Federman Assocs. v. Paradigm Med. Indus., Inc.*, No. 96 CIV. 8545(BSJ), 1997 WL 811539, at **4-5 (S.D.N.Y. Apr. 8, 1997) (finding that transfer would not impose an undue financial burden on a plaintiff where the plaintiff's attorney was working on a contingency-fee basis).

　　　　Similarly, the record discloses that many of Principal's corporate officers will be required to travel from Iowa to this District to testify at trial if these proceedings continue here. By contrast, it appears that the only party to these proceedings who will be significantly convenienced by this forum is Ruppert.[2] The minor inconvenience to Ruppert of having to travel to Iowa to testify

_____

2.　The Court assumes that, unless Ruppert's expert witnesses are from this District, they will be required to travel whether the forum is here or in Iowa.

at trial is vastly outweighed by the inconvenience to Principal of having to produce numerous corporate officers as witnesses at trial in this District. *See Headon v. Colorado Boys Ranch*, No. Civ.A. 204CV04847LDD, 2005 WL 1126962, at **5-6 (E.D. Pa. May 5, 2005) (holding that transfer was appropriate where most of the material witnesses to the transactions at issue were situated in the transferee forum and the defendant would incur significant financial costs and disruption of its business if its employees were forced to leave their duties and appear at trial as witnesses in the transferor court); *Returns Distrib. Specialists, LLC v. Playtex Prods., Inc.*, No. 02-1195-T, 2003 WL 21244142, at *7 (W.D. Tenn. May 28, 2003) (transferring an action to Delaware where "both Defendants and their corporate witnesses are located in Delaware" so that "it would be difficult for Defendants to operate their businesses if their employees were required to be in Tennessee during the trial of this matter."); *Simmons Ford, Inc. v. Consumers Union of U.S., Inc.*, 490 F. Supp. 106, 108-09 (W.D. Mich. 1980) (the balance of convenience tipped decisively in favor of the transfer of a diversity action, sounding in tort, for damages consequent to an adverse product test evaluation of a small electric automobile in a consumer magazine when the unchallenged affidavits of the publisher's personnel established that the publisher would be inconvenienced substantially if its employees had to testify in Grand Rapids, Michigan, and the countervailing inconvenience to the manufacturer and distributor of the automobile was comparatively small).

       The record shows that, although Principal is a successful company that services plans all over the United States, its business operations are closely concentrated in the Southern District of Iowa, and that judicial district, in the Court's view, is the correct forum for this case. *See Neil Bros., Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 327-34 (E.D.N.Y. 2006) (transfer of venue was proper where numerous witnesses resided in the transferee forum but none resided in the

transferor forum, the locus of operative facts was generally in the transferee forum, and transfer was not shown to be financially untenable for the plaintiff); *Pergo, Inc. v. Alloc, Inc.*, 262 F. Supp. 2d 122, 129-30 (S.D.N.Y. 2003) (granting a defendant corporation's motion to transfer a case to the forum where the defendant's headquarters were located because all of the transactions at issue in the case occurred there and the majority of the proof relevant to liability was located there). Accordingly, reconsideration of the Court's June 1 order is denied.  Because Ruppert's attorneys have expressed an intention to seek review of the transfer order by a petition for a writ of mandamus, the Court will stay transfer pending resolution of such a petition.[3]

### III. Conclusion

Ruppert's motion for reconsideration (Doc. 57) and motion for oral argument thereon (Doc. 61) are **DENIED**.  Transfer of this action to the United States District Court for the Southern District of Iowa pursuant to 28 U.S.C. § 1404 is **STAYED** pending resolution of a petition for a writ of mandamus by Ruppert as to the Court's order of transfer.  Upon denial of any such petition, the parties will promptly inform the Court so that the stay of transfer can be lifted.

**IT IS SO ORDERED.**

Signed this 9th day of July, 2007.

/s/       David RHerndon
**United States District Judge**

---

3.   Naturally, the Court expresses no opinion as to the propriety of issuance of a writ of mandamus in this case.